Lincoln Bandlow (SBN: 170449)
 LBandlow@foxrothschild.com
Conrad B. Wilton (SBN: 313348)
 CWilton@foxrothschild.com
FOX ROTHSCHILD LLP
10250 Constellation Blvd., Suite 900
Los Angeles, CA 90067
Telephone: 310.598.4150
Facsimile: 310.556.9828

Attorney for Plaintiff
LA TOURAINE, INC., *dba* NAUGHTY AMERICA.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

LA TOURAINE, INC., a Nevada corporation *dba* NAUGHTY AMERICA,

　　　　　Plaintiff,

　　vs.

IVAN VARKO, a Slovenian national *aka* John Deiz, John Daizy, John Deig, Alex Novak, and "Daizzzy," and V.R.S. VIRTUAL REALITY TECHNOLOGY LTD, a Cyprus limited company *dba* SEXLIKEREAL,

　　　　　Defendants.

Case No.: **'18CV2160 BEN NLS**

**COMPLAINT FOR:**

**(1) BREACH OF CONTRACT**

**(2) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

**(3) COPYRIGHT INFRINGEMENT [17 U.S.C. § 501]**

**(4) LANHAM ACT VIOLATION [FALSE DESIGNATION OF ORIGIN, 15 U.S.C. §1125]**

**(5) LANHAM ACT VIOLATION [TRADEMARK INFRINGEMENT, 15 U.S.C. § 1114]**

**(6) UNFAIR COMPETITION [CAL. BUS. & PROF. CODE § 17200]**

**JURY DEMAND**

Plaintiff La Touraine, Inc. *dba* Naughty America ("LTI") brings this complaint against Defendants Ivan Varko ("Varko") and V.R.S. Virtual Reality Technology LTD *dba* SexLikeReal ("SLR") (collectively, "Defendants"), and alleges as follows:

**INTRODUCTION**

1.      This case involves the misuse, infringement and exploitation of LTI's valuable intellectual property rights in adult-film productions, which LTI licensed to Varko for use pursuant to an affiliate agreement ("Affiliate Agreement").  As an affiliate of LTI, Varko expressly agreed to use the works on his network of websites (the flagship site being www.SexLikeReal.com) "for the exclusive purpose of advertising, marketing, or promoting LTI's online services and products."  SLR became a party to the Affiliate Agreement by assuming the obligations thereunder.  A true and correct copy of the Affiliate Agreement is attached hereto as Exhibit "A."

2.      In breach of the Affiliate Agreement and in willful disregard for LTI's duly registered and highly valuable copyrights and trademarks, Defendants used licensed content from over 150 of LTI's works to funnel traffic towards their application (the "SLR App"), which sells video-on-demand access to third-party virtual reality content.

3.      In addition, Defendants affixed SLR's trademarks and branding (*i.e.*, "Powered by SexLikeReal") on LTI's productions to intentionally confuse consumers into believing SLR produced, owned, or was otherwise affiliated with LTI's works.  This is blatant trademark infringement.  Defendants then uploaded and without authorization "licensed" clips of these works to various tube sites, including but not limited to Pornhub.com, xHamster.com, av2all.com, Thumbzilla.com, CarambaTube.tv, 16Honeys.com, PinkClips.mobi, and iPornTV.net, which licenses purportedly granted these various sites the right to exploit, reproduce, distribute, display, communicate, perform, and/or prepare derivative works of the content at will.  This is blatant copyright infringement.

4.      Defendants misrepresent their commercial relationship with LTI by creating the false impression that SLR is a licensee of LTI's full-length videos.  The Affiliate Agreement only permitted Defendants to use up to two-minute clips of LTI's works.  Yet, while the Affiliate

CASE NO._____

Agreement was still in effect, SLR's website falsely indicated it had 152 full-length videos owned and distributed by LTI and listed these videos in a thumbnail format with each indicating the full run time of the scenes.  When a user clicks on one of these thumbnails, he or she is directed to a two-minute clip next to which a call to action button to download the SLR App is prominently displayed. In addition to deceptive advertising and trademark infringement, this practice violates the Affiliate Agreement, which expressly prohibits Defendants from misrepresenting their contractual relationship with LTI or implying any affiliation or relationship exists except as the Affiliate Agreement expressly provides.

5.     Defendants engaged in all of the above practices without notice to LTI.  After LTI alerted them of these flagrant breaches of the Affiliate Agreement and unlawful behavior, Defendants expressly admitted they engaged in this conduct but assured LTI it was a "one time issue."

6.     Despite LTI's termination of the Affiliate Agreement and repeated demands that Defendants cease their infringing activities, Defendants continue to falsely associate LTI's content with the SLR brand, continue to distribute LTI's content to tube sites, and continue to display two-minute clips from 88 LTI works across the network of websites Varko owns, controls, manages and/or operates (the "Daizzzy Network") to direct traffic to the SLR App and to third-party associates.

7.     By this action, LTI seeks to recover:  i) Actual damages for Defendants' breach of contract and breach of the implied covenant of good faith and fair dealing; ii) Actual damages, profits and statutory penalties for willful copyright infringement; iii) Actual damages, profits, and treble damages for intentional trademark infringement; and iv) Restitution for Defendants' unfair competition.  LTI further seeks to enjoin Defendants from further infringement and exploitation of its works and trademarks, to enjoin their fraudulent and deceptive business practices, and to recover its attorneys' fees and costs as provided for under the Copyright and Lanham Acts.

**PARTIES**

8.      Plaintiff La Touraine, Inc. *dba* Naughty America ("LTI") is an award-winning adult-entertainment company founded in April of 1999 with its principal place of business in San Diego, California.  LTI is a Nevada corporation qualified to conduct business in the state of California.

9.      Defendant Ivan Varko ("Varko") is an individual who resides in Ljubljana, Slovenia.  LTI is informed and believes that Varko uses a number of aliases and is also known as John Deiz, John Daizy, John Deig, Alex Novak, and "Daizzzy."

10.      Defendant V.R.S. Virtual Reality Technology LTD *dba* SexLikeReal ("SLR") is a sales company that markets subscriptions to third-party adult content and related products to Internet users worldwide.  SLR also owns, controls, manages and/or operates the SLR App, which users can download to view video-on-demand adult content from third-party studios, including virtual reality content and related products.  SLR is a limited company with its registered office in the Republic of Cyprus.  Varko owns, controls, manages, and/or operates SLR, which was incorporated on December 30, 2016.

**JURISDICTION**

11.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1332 (diversity), and 28 U.S.C. § 1338 (jurisdiction over copyright actions).

12.      Personal jurisdiction exists over Varko because he deliberately contracted with a party in California and this dispute arises out of that contract.  Further, jurisdiction is proper pursuant to the parties' Affiliate Agreement in which both parties "agree and consent to personal jurisdiction in the State of California for all actions or proceedings arising in connection with this Affiliate Agreement."  Ex. A ¶ XIV.B.

13.      Personal jurisdiction exists over SLR because it assumed the obligations of the Affiliate Agreement and, thus, became a party thereto.  Moreover, the Affiliate Agreement expressly states the parties agree and consent to personal jurisdiction in the State of California.

4

14.     Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to LTI's claims arising from the parties' Affiliate Agreement, which is "deemed by the parties to have been executed and delivered in San Diego, California."  Ex. A ¶ XIV.A.  Moreover, venue is proper pursuant to the Affiliate Agreement's mandatory forum selection clause in which both parties agreed that "all actions or proceedings arising in connection with this Affiliate Agreement… shall be tried and litigated exclusively in the State or Federal Courts located in the County of San Diego, State of California."  Ex. A ¶ XIV.B.

15.     Wherever federal law does not apply to this dispute, California law governs pursuant to the Affiliate Agreement's choice of law provision.  Ex. A ¶ XIV.A.

## FACTUAL BACKGROUND

### The Parties Enter Into An Affiliate Agreement

16.     In or around 2008, Varko entered into an affiliate agreement with LTI under which he was provided a limited license to use select clips of LTI's produced content for the sole purpose of marketing LTI's subscriptions, products, and services in exchange for a payment of commission based on sales.  This agreement was a click-wrap contract whereby Varko indicated he reviewed and consented to the agreement by clicking a button to submit his application to become an affiliate of LTI.  Clicking the button effectively executed the agreement.

17.     The 2008 agreement was amended in September 2010 and again in November 2013.  Exhibit A (*i.e.*, the Affiliate Agreement) is a true and correct copy of the most recent amendment and the contract from which this suit arises.

18.     Further, all of the agreements between the parties, including the Affiliate Agreement, expressly state that LTI reserves the right to modify the terms and conditions at any time by posting such modifications on its website or notifying Varko directly.  Ex. A ¶ XIII.B.  Varko's continued participation in the program following the posting of such modifications constitutes his binding acceptance thereto.  *Id.*

5

19.     LTI posted an amended affiliate agreement in 2010 and the current Affiliate Agreement in 2013 on its website, and Varko continued his participation in the affiliate program, thereby indicating acceptance and effective execution of these modified agreements.

20.     In 2015, Varko launched SLR, and SLR thereafter assumed the obligations under the Affiliate Agreement and consequently became a party thereto.

21.     The Affiliate Agreement solely governs this dispute.  Ex. A ¶ XIII.A ("[t]his Affiliate Agreement constitutes the entire agreement between the parties and supersedes all prior agreements and understandings with respect to the subject matter hereof.").

22.     The Affiliate Agreement expressly states the following terms (in relevant part):

*"VI.A.  Grant of Limited License.  Subject to La Touraine's acceptance of your Program application and your agreement to the terms and conditions of this Affiliate Agreement, you will be granted a limited, non-exclusive, royalty-free, non-transferable, non-assignable and revocable license during the term of this Affiliate Agreement to download and use on your site Licensed Content[1] for the* **exclusive purpose of advertising, marketing, or promoting La Touraine's online services and products.** *This license is revocable by La Touraine at any time, in La Touraine's sole discretion, with or without prior notice."*

*"VI.B.  Limitations on License.* **You may only use Licensed Content in accordance with the Agreement**, *on one computer at a time."*

*"VI.B.(1).  Use Restrictions.  You acknowledge and agree that* **any and all unauthorized access, viewing, downloading, receipt, duplication, or other use of Licensed Content in which you are directly or indirectly involved, shall constitute a material breach of the Agreement, intentional infringement(s) of La Touraine's and potentially others' trademarks, copyrights, intellectual property**, *and/or other rights including without limitation, the rights of privacy and publicity."*

*"VI.B.(2).  Other Prohibited Actions. You acknowledge and agree that you are prohibited from:*
> *a.    modifying, translating, reverse engineering, decompiling, and/or disassembling Licensed Content;*

[1] "Licensed Content" is defined as "any images, text, data, motion pictures, video clips, audio clips, advertising banners, hyperlinks or other information obtained from La Touraine in connection with the [affiliate program] and only in accordance with the terms of this agreement."  Ex. A ¶ II.A.(4).

CASE NO._____

b.   *creating derivative works based on Licensed Content;*

c.   **renting, leasing, or transferring any rights in Licensed Content;**

d.   *removing any proprietary notices or labels on Licensed Content; and*

e.   **making any other unauthorized use of Licensed Content."**

Ex. A [emphasis added].

23.   The Affiliate Agreement further states:

> "*V.E.(2).  Misrepresentation of Relationship.  You represent and agree* **that you will not misrepresent your contractual relationship with La Touraine or imply that any affiliation or relationship exists with La Touraine** *except as expressly provided in this Affiliate Agreement.*"

> "*V.E.(5).  Links to and Content of Others.  You represent and agree that* **you will not use La Touraine's images, content, or promotional material to promote and/or link to any other site.**"

Ex. A [emphasis added].

24.   From in or around 2008 through June of 2015, Varko operated as LTI's affiliate and via his Daizzzy Network sent small amounts of Internet traffic to LTI's Sites.  Such traffic very infrequently converted to paid memberships ("Joins") for LTI.  For example, during the period from January 2015 through the end of June 2015, the Daizzzy Network referred an average of approximately 20,000 visits per month to LTI's Sites.  These visits accounted for a total of just 17 Joins to LTI's websites.

25.   On July 2, 2015, LTI launched its virtual reality content.  This launch constituted a very expensive and risky venture by LTI into an unproven sector of online adult entertainment.  Around this time, Varko developed SLR to also capitalize on this emerging market and began to direct his efforts at promoting virtual reality content.  Thereafter, SLR significantly increased the amount of traffic and sales referred to LTI's websites.  For example, in July 2015, SLR referred 44,091 visits to LTI's websites, which generated 134 Joins.  As another example, SLR generated 436 Joins in March 2016.

## Defendants Approached LTI for a License to Host LTI Content

26.   In or around August 2016, SLR changed its business model and began pitching to

7

LTI and various third-party adult content producers a plan to allow SLR to sell access to virtual reality scenes on a video-on-demand basis.  Under this proposal, SLR would host virtual reality videos, SLR's payment processor would process users' purchases of video-on-demand access to the videos, and SLR would collect all payments and distribute a portion to the content owner as a royalty/licensing fee.  Such an arrangement would mark a complete reversal of the SLR and LTI's relationship to date, as LTI had previously hosted its full-length content on its sites, selected payment processors, and distributed commissions to its affiliates, including SLR.

27.     To entice LTI to accept this proposal, SLR offered to provide LTI with additional traffic from its sites in exchange for LTI providing full-length videos for SLR to offer via video-on-demand.  LTI traditionally has not embraced a licensing model and preferred to be the exclusive provider of its content.  However, LTI was intrigued enough to draft a proposed custom license agreement that would facilitate the beginning of a licensing arrangement.  LTI presented the custom agreement to SLR in February 2017.

28.     In April 2017, SLR rejected LTI's proposed custom agreement and instead offered an extremely one-sided form agreement in favor of SLR that, among other objectionable terms, would have granted SLR an irrevocable license to use LTI's copyrights for any purpose, including the rights to the "publication, display, sale and creation of derivative works" and the right to modify the licensing fees payable to LTI in SLR's sole discretion.  While LTI was in the process of reviewing SLR's proposal, it conducted due diligence on Defendants and LTI discovered that Defendants were not complying with the Affiliate Agreement.

**LTI Discovers Several Breaches of the Affiliate Agreement**

29.     On May 9, 2017, LTI's compliance department discovered that Defendants had been operating outside the bounds of the Affiliate Agreement.  Rather than using LTI's copyrighted content and trademarks *exclusively* to promote and drive traffic to LTI's websites as Paragraph VI.A of the Affiliate Agreement requires, on a date unknown to LTI, Defendants had begun to use LTI's Licensed Content to funnel traffic towards the SLR App with the ultimate goal of selling video-on-demand access to third-party virtual reality content and products.  As a result, LTI noticed a

COMPLAINT
ACTIVE\64840172.v1-9/17/18

CASE NO._____

1   significant decline in Joins referred by SLR from 439 in December 2016 to 142 in May 2017.

2        30.      On May 11, 2017, LTI shared its concerns with Defendants.  In response, Varko

3   stated "We are shifting SexLikeReal towards pay per view model and are focusing on promoting our

4   partners first on the site and application…as a result affiliate programs are getting lesser [*sic*] traffic

5   from us all over the board.  We would be happy to see [Naughty America] on board.  The sales are

6   really awesome and people really like our product.  [Naughty America] is a missing part."  Varko

7   further contended that the decline in Joins to LTI sites coming from SLR were "something beyond

8   our control."

9        31.      In July 2017, LTI again reviewed SLR's sites to determine if Defendants were

10  complying with the Affiliate Agreement.  Again, they were not.  In fact, Varko had made additional

11  changes throughout the Daizzzy Network to further use LTI's valuable intellectual property to drive

12  users toward purchasing third-party video-on-demand content, as well as directing users to the SLR

13  App, rather than directing traffic to LTI's websites as the Affiliate Agreement required.  Defendants

14  marketed this third-party content and the SLR App by prominently placing links under and next to

15  the video player displaying LTI's work.

16       32.      This use of LTI's Licensed Content to promote the SLR App and third-party content

17  violates Paragraphs VI.A. and V.E.(5) of the Affiliate Agreement.  Such use also exceeded the

18  bounds of permissible use set forth in the Affiliate Agreement in violation of Paragraphs VI.B. and

19  VI.B.(2)(e).  Further, by strategically placing prominent links to the SLR App and third-party

20  products next to displays of LTI's works, Defendants created the false impression that an affiliation

21  or relationship exists between LTI and SLR in violation of Paragraph V.E.(2) of the Affiliate

22  Agreement.  *See also* Ex. A ¶ V.E.(3) ("unauthorized use of Licensed Content… shall constitute a

23  **material breach** of this Affiliate Agreement.") [emphasis added].

24       33.      Defendants' actions constitute the unauthorized, willful, and intentional exploitation

25  of LTI's cutting-edge copyrighted content and well-known brand to increase SLR's revenue and that

26  of its third-party associates while decreasing traffic and Joins sent to LTI.  Moreover, Defendants

27

28

COMPLAINT
ACTIVE\64840172.v1-9/17/18                                                    CASE NO._____

1    attempted to leverage this decline in Joins to force LTI to agree to an unfair license of full-length

2    content for inclusion in SLR's video-on-demand service.

3    **Defendants Willfully Infringed LTI's Trademarks and Copyrights, and Engaged in**

4    **Fraudulent and Deceptive Business Practices**

5    34.    LTI owns two trademarks under "NAUGHTY AMERICA VR" registered on June 21,

6    2016 and November 29, 2016 (USPTO Reg. Nos. 4981838 and 5089348) for interactive websites

7    featuring adult entertainment and entertainment services in the nature of the production and

8    distribution of virtual reality motion pictures.  LTI also owns the trademark "REAL TEENS VR"

9    registered on July 25, 2017 (USPTO Reg. No. 5252704) for entertainment services in the nature of

10   the production and distribution of virtual reality motion pictures and providing an online interactive

11   Website featuring adult entertainment subject matter.  LTI owns approximately 70 other marks

12   specific to its adult entertainment business.

13   35.    SLR owns the trademark "SEX LIKE REAL" registered on February 27, 2018

14   (USPTO Reg. No. 5411042) for, *inter alia*, virtual reality software, video-on-demand transmission

15   services, entertainment services, and adult-themed websites.

16   36.    While conducting its compliance investigation in July 2017, LTI located several clips

17   of its copyrighted content included on the tube site Pornhub.  In its subsequent compliance

18   investigations in August and September of 2018, LTI located several clips of its copyrighted content

19   were included on various tube sites, including but not limited to Pornhub, xHamster.com,

20   av2all.com, Thumbzilla.com, CarambaTube.tv, 16Honeys.com, PinkClips.mobi, and iPornTV.net.

21   Defendants strategically placed the brand "Powered by SexLikeReal" at the end of the works' titles

22   to make it appear as if SLR produced, owned, distributed or was otherwise affiliated with these

23   titles.  On some works, SLR's registered trademark "SEX LIKE REAL" was displayed on the upper

24   right-hand corner of the screen to, again, falsely indicate that the work came from SLR.  This is an

25   unauthorized use, unauthorized copying, and unauthorized public performance and/or display of

26   LTI's copyrighted content.  It also violates LTI's trademark rights by passing off LTI's works as

27   SLR's.  Defendants' clear intent was to associate LTI's content with SLR and increase the value of

28

COMPLAINT                                                    CASE NO._____
ACTIVE\64840172.v1-9/17/18

the mark SEX LIKE REAL in the minds of consumers by falsely designating it as the origin of LTI's works.  At this time, LTI did not upload its virtual reality content to tube sites and did not permit others to do so.

37.     Further, in uploading content to tube sites, SLR agreed to grant rights to LTI's content that far exceeded those granted in LTI's license to SLR, which constitutes breach of the Affiliate Agreement and intentional infringement of LTI's intellectual property rights.  *See* Ex. A ¶ VI.B.(1).  It also improperly transfers "rights" to the Licensed Content that the Affiliate Agreement expressly prohibits.  *See* Ex. A ¶ VI.B.(2).  By way of example, www.pornhub.com states that by uploading content the users (*i.e.*, SLR) "grant [Pornhub] a worldwide, irrevocable, perpetual, non-exclusive, royalty-free, sublicenseable and transferable license to use, exploit, reproduce, distribute, prepare derivative works of, display, communicate, and perform the Content in connection with [Pornhub's] (and its successors' and affiliates') business, including without limitation for promoting and redistributing part or all of [the work(s)] (and derivative works thereof) in any media formats and through any media channels."  SLR had no authority to transfer ***any*** rights to the Licensed Content, let alone issue such an expansive license as this.  *See* Ex. A ¶ VI.B.(2).  The copying, distribution, and public performance of the Licensed Content are exclusive rights of the copyright holder, LTI.

38.     SLR also engaged in infringing conduct within the Daizzzy Network.  When SLR was operating within the bounds of the Affiliate Agreement, it displayed a button next to LTI's work, which read "Visit Naughty America for Full Video" and linked to a page where users could subscribe to LTI.  At some point, SLR switched the content of this button to read "Get SexLikeReal VR App" and linked users toward SLR's offers for third-party video-on-demand content and products.  Further, above the video player displaying LTI's works is a hyperlink that reads "NaughtyAmerica VR (152) videos."  Clicking this link, however, does not direct the user to LTI's website or 152 full-length videos as the link would suggest, but rather leads to www.SexLikeReal.com.  This misuse of Licensed Content constitutes copyright and trademark infringement pursuant to Paragraph VI.B.(1) of the Affiliate Agreement and because it uses LTI's

11

1  trademark NAUGHTY AMERICA VR in connection with the sale of SLR-related products and is,

2  thus, highly likely to confuse users into believing SLR's products are in some way affiliated with

3  LTI.

4      39.    Such improper practices are pervasive throughout the Daizzzy Network and are

5  linked to dozens of videos.  For instance, on www.VRPornUpdates.com, Defendants displayed

6  portions of LTI's copyrighted content and trademarks.  Clicking on the text of the title of LTI's

7  content would send a user to www.SexLikeReal.com.  Moreover, selecting the "NaughtyAmerica

8  VR" button would lead users to a page within www.VRPornUpdates.com, a site Varko operates.

9  Again, Defendants exploited LTI's intellectual property to confuse the public into believing SLR

10  was affiliated with LTI, which in turn boosted SLR's revenues and damaged LTI.

11      40.    Defendants further misrepresented SLR's relationship with LTI and infringed on its

12  intellectual property when it created the false impression to SLR's users that www.SexLikeReal.com

13  contained LTI's full-length content (and, thus, that SLR was a video-on-demand licensee of LTI – an

14  arrangement with which LTI had refused to agree).  A screen capture of www.SexLikeReal.com

15  from July 2017 reflecting SLR's studio page for LTI's works states that the website has 153 of LTI's

16  videos and lists a number of these videos in a thumbnail format, with each video indicating the full

17  run time of the scenes.  However, SLR did not have full access to LTI's full-length works.  So a

18  user, duped into thinking he or she would be gaining access to a full video, would click on the

19  thumbnail image and view a two-minute clip of the work.  This constitutes deceptive advertising and

20  unfair competition, as well as misuse of LTI's intellectual property.  SLR also prominently displayed

21  the text "Sex Like Real VR Porn Movies" above the list of LTI's works, further confusing users as

22  to the real content producer.

23                           **Termination of Affiliate Agreement**

24      41.    On July 17, 2017, on the basis of Defendants' repeated breach of the Affiliate

25  Agreement – including SLR's infringement of no less than 152 of LTI's copyrighted works, as well

26  as several LTI trademarks – LTI terminated the Affiliate Agreement with Varko and all related

27  entities (including SLR) and sent a Termination of Affiliate Agreement and Take Down Demand

28

COMPLAINT                                              CASE NO._____
ACTIVE\64840172.v1-9/17/18

(the "Termination Notice") to that effect.  A true and correct copy of the Termination Notice is attached hereto as Exhibit "B."  A true and correct copy of the list of LTI's 152 works that Defendants infringed is attached hereto as Exhibit "C."  A true and correct copy of LTI's trademarks that Defendants infringed is attached hereto as Exhibit "D."

42.     In response to the Termination Notice, Varko admitted that the use was improper, apologized repeatedly, and further admitted in an email that the breach and infringement never should have happened but had been ongoing for at least two months.  He also falsely represented in a letter that "your content is no longer available on our website" and added the infringement was a "one time issue" and that "we fully intend to respect your content, brand and our partnership."

43.     From the termination of the Affiliate Agreement to December of 2017, Varko attempted several times to reach out to LTI to reconcile their relationship.  LTI declined every offer.

### Defendants' Ongoing Infringement and Deceptive Business Practices

44.     In September 2018, over a year after the Affiliate Agreement was terminated, LTI researched Defendants' online activities to confirm all infringement had ceased.  Once again, it had not.

45.     LTI discovered that Defendants' infringing use of LTI's copyrights and trademarks across the Daizzzy Network continued and was widespread despite receipt of the Termination Notice.  While it appears that Defendants removed some of LTI's intellectual property from the sites named in the Termination Notice, Defendants continued to engage in willful infringement on the Daizzzy Network.  LTI discovered at least 88 works (many more are believed to exist) and several LTI trademarks that were being displayed throughout the Daizzzy Network for users to stream and download.  These works are listed by copyright registration number in Exhibit "E," attached hereto.  Given that the parties' Affiliate Agreement was terminated, Defendants were not authorized to reproduce, display, distribute, or otherwise make use of any of LTI's works or trademarks after July 17, 2017 for any purpose whatsoever, notwithstanding the fact that Defendants continued to use these materials to promote the SLR App and third-party content.  Defendants were obligated under Paragraph VI.E. to immediately upon termination "delete all copies of Licensed Content that may

13

1  reside on any computer system and/or web site owned by you or under your control." Rather than

2  delete these materials as required, Defendants continued to exploit them.

3      46.    Further, Defendants continued to distribute LTI's copyrighted content branded as

4  "Powered by SexLikeReal" on various adult tube sites to deliberately confuse users into believing

5  the parties are somehow affiliated. The distribution of these scenes via tube sites was not authorized

6  by LTI in any way, including under the Affiliate Agreement, even if it were still in effect. Given

7  that the Affiliate Agreement was terminated over one year ago, this use constitutes willful and

8  intentional copyright infringement.

9      47.    On September 7, 2018, LTI delivered another letter to Defendants outlining these

10  activities and demanding that they cease-and-desist from all infringement immediately. A true and

11  correct copy of this letter is attached hereto as Exhibit "F."

12      48.    On September 8, Defendants finally removed LTI's content and trademarks from

13  SLR's website and the Daizzzy Network. However, Defendants have failed to ensure the removal of

14  LTI's content from several tube sites to which Defendants unlawfully "licensed" LTI's works.

15  Exhibit "G," attached hereto, lists links to these sites currently displaying LTI's content which LTI

16  has discovered to date.

17      49.    Further, Defendants' widespread infringement has had a lasting detrimental impact on

18  LTI's online footprint. Various Google searches for LTI's content currently reflect dozens of links

19  to LTI's content on third-party sites listing the works as "Powered by SexLikeReal" to appear above

20  links to the works on LTI's websites. A true and correct copy of a sampling of these searches is

21  attached hereto as Exhibit "H." Consequently, potentially millions of Internet users worldwide

22  searching for LTI's content on the mega-search engine Google are not only highly likely to be

23  confused into believing that SLR produced LTI's work or is in some way affiliated with LTI, but

24  these consumers are also likely to click on the third-party "Powered by SexLikeReal" links as

25  opposed to LTI's links. This directly undercuts LTI's market for its works and breaches Paragraph

26  V.D. of the Affiliate Agreement, which prohibits Defendants from purchasing any online paid

27  advertising schemes that "incorporate or are confusingly similar to any of La Touraine's trademarks,

28

14

service marks, or URLs."  The Affiliate Agreement specifically defines a "prohibited advertising scheme" as inclusive of "pay-per-click models, sponsored links, *search engine keywords*, AdWords, or similar advertising schemes." [emphasis added].

## FIRST CLAIM FOR BREACH OF CONTRACT

### (Against All Defendants)

50.     LTI realleges and incorporates each and every allegation set forth in paragraphs 1 through 49 as though fully set forth herein.

51.     LTI has performed all of its duties and obligations under the Affiliate Agreement, except those duties and obligations, if any, for which performance was waived or excused, or prevented by Defendants.

52.     Defendants breached the Affiliate Agreement by:

a.     Using LTI's Licensed Content in a way that misrepresents SLR's contractual relationship with LTI or implies an affiliation or relationship exists between SLR and LTI in violation of Paragraph V.E.(2);

b.     Using LTI's Licensed Content to promote and/or link to a site other than LTI in violation of Paragraph V.E.(5);

c.     Using LTI's Licensed Content for another purpose aside from advertising, marketing, or promoting LTI's online services and products in violation of Paragraph VI.A;

d.     Using LTI's Licensed Content in a way not permitted by the Affiliate Agreement in violation of Paragraph VI.B;

e.     Distributing LTI's Licensed Content to third-party sites and thereby causing it to be accessed, viewed, downloaded, received, duplicated, and otherwise used in ways not permitted by LTI in violation of Paragraph VI.B.(1);

f.     Transferring rights to the Licensed Content to third-party sites and making unauthorized use of the Licensed Content in violation of Paragraph VI.B.(2);

COMPLAINT
ACTIVE\64840172.v1-9/17/18                                                          CASE NO._____

g.      Purchasing an online paid advertising scheme to capture traffic using search engine keywords incorporating LTI's works, trademarks, service marks, and URLs in violation of Paragraph V.D.; and

h.      Failing to delete from any computer and/or web site owned by Defendants or under their control all copies of LTI's Licensed Content immediately upon termination of the Affiliate Agreement pursuant to Paragraph VI.E.

53.      Each of the foregoing violations constitute material breaches of the Affiliate Agreement pursuant to Paragraph V.E.(3), which expressly states any unauthorized use of the Licensed Content shall constitute a material breach.

54.      As a direct and proximate cause of Defendants' breaches, LTI has sustained damages in a sum not presently ascertained, but subject to proof at trial, and in excess of the jurisdictional minimum of this Court.

## SECOND CLAIM FOR BREACH OF THE IMPLIED COVENANT
## OF GOOD FAITH AND FAIR DEALING
### (Against All Defendants)

55.      LTI realleges and incorporates each and every allegation set forth in paragraphs 1 through 54 as though fully set forth herein.

56.      Implied within the Affiliate Agreement is a covenant of good faith and fair dealing, which prohibits either party from unlawfully interfering with either party's right to receive the benefits of the contract.

57.      LTI has performed all of its duties and obligations under the Affiliate Agreement, except those duties and obligations, if any, for which performance was waived or excused, or prevented by Defendants.

58.      Defendants unlawfully and in bad faith exploited LTI's intellectual property for its own gain, intentionally caused the number of Joins to LTI to plummet in favor of directing traffic to SLR and its third-party associates, and prevented LTI from obtaining the benefits it reasonably anticipated under the Affiliate Agreement.

16

59.     As a direct and proximate cause of Defendants' breach, LTI has sustained damages in a sum not presently ascertained, but subject to proof at trial, and in excess of the jurisdictional minimum of this Court.

## THIRD CLAIM FOR DIRECT COPYRIGHT INFRINGEMENT

### (Against All Defendants)

60.     LTI realleges and incorporates each and every allegation set forth in paragraphs 1 through 59 as though fully set forth herein.

61.     LTI is the owner of the works listed in Exhibit C, which are original works of authorship and registered with the United States Copyright Office.

62.     Defendants reproduced, displayed, and distributed two-minute clips of the works (the Licensed Content) throughout the Daizzzy Network and to third-party tube sites to promote SLR's application, brand, and third-party associates' content.  Defendants also copied, displayed and distributed the Licensed Content over a year after the Affiliate Agreement was terminated without any new license or permission from LTI.

63.     The clips that Defendants infringed constitute the key portions (*i.e.*, the heart) of the corresponding works, were not significantly transformed or altered in any way, and were used for commercial purposes undercutting LTI's market for its works.

64.     As a result of the foregoing, Defendants violated LTI's exclusive right to:

    a.     Reproduce its works in copies in violation of 17 U.S.C. §§ 106(1) and 501;

    b.     Distribute copies of its works to the public by sale or other transfer of ownership, by rental, lease or lending in violation of 17 U.S.C. §§ 106(3) and 501;

    c.     Perform the copyrighted works publicly in violation of 17 U.S.C. §§ 106(4) and 501 by showing the works' images in any sequence and/or by making the sounds accompanying the works' and transmitting this performance of the work, by means of a device or process, to members of the public capable of receiving the display; and

17

d.      Display the copyrighted works publicly in violation of 17 U.S.C. §§ 106(5) and 501 by showing individual images of the works non-sequentially and transmitting this display of the works by means of a device or process to members of the public capable of receiving the display.

65.      Defendants further agreed pursuant to Paragraph VI.B.(1) of the Affiliate Agreement that such unauthorized use "shall constitute…intentional infringement(s) of La Touraine's and potentially others' trademarks, copyrights, intellectual property, and/or other rights including without limitation, the rights of privacy and publicity."

66.      As a direct and proximate cause of Defendants' infringement, LTI has sustained actual damages in a sum not presently ascertained, but subject to proof at trial, and in excess of the jurisdictional minimum of this Court.

67.      Defendants' infringements were committed intentionally and "willfully" within the meaning of 17 U.S.C. § 504(c)(2) with full knowledge of, and in conscious disregard for, LTI's intellectual property rights.  Thus, an award of statutory penalties is warranted.

68.      Further, if Defendants' infringing activities continue, LTI will suffer immediate, serious and irreparable injury to its reputation and market for its goods and services, for which monetary damages alone are inadequate.

## FOURTH CLAIM FOR LANHAM ACT VIOLATION –
## FALSE DESIGNATION OF ORIGIN
### (Against All Defendants)

69.      LTI realleges and incorporates each and every allegation set forth in paragraphs 1 through 68 as though fully set forth herein.

70.      Defendants prominently displayed the brand "Powered by SexLikeReal" next to the titles of the works to indicate SLR produced the content, not LTI.  Over LTI's works, Defendants displayed the trademark "SEX LIKE REAL" in the upper right-hand corner of the screen to falsely indicate ownership of and/or affiliation with the work and/or LTI.

18

71.    Accordingly, Defendants used SLR's brand (*i.e.*, any word, term, name, symbol, or device) and registered trademark SEX LIKE REAL in commerce on LTI's goods to actually and/or likely cause confusion, mistake, and/or deceive consumers as to the origin of LTI's works in violation of 15 U.S.C. § 1125(a)(1)(A).

72.    Defendants further actually and/or likely caused confusion as to their perceived affiliation, connection, sponsorship, endorsement, or association with LTI in violation of 15 U.S.C. § 1125(a)(1)(A) by aggressively marketing the SLR App and third-party content in conjunction with LTI's Licensed Content, as well as hiding links to SLR's webpages and products under LTI's trademarks.

73.    As a direct and proximate cause of Defendants' infringement, LTI has sustained actual damages in a sum not presently ascertained, but subject to proof at trial, and in excess of the jurisdictional minimum of this Court.

74.    Defendants' infringements were committed intentionally and warrant an award of treble damages pursuant to 15 U.S.C. § 1117(b).

75.    Further, if Defendants' infringing activities continue, LTI will suffer immediate, serious and irreparable injury to its reputation and market for its goods and services, for which monetary damages alone are inadequate.

## FIFTH CLAIM FOR LANHAM ACT VIOLATION –

## TRADEMARK INFRINGEMENT

### (Against All Defendants)

76.    LTI realleges and incorporates each and every allegation set forth in paragraphs 1 through 75 as though fully set forth herein.

77.    Defendants exploited LTI's registered trademarks and copyrighted works to direct users to www.SexLikeReal.com which markets SLR's goods and services, as well as access to third-party content.  Defendants displayed LTI's works below a hyperlink that reads "NaughtyAmerica VR (152) videos" but then links to SLR's website www.SexLikeReal.com.  Further, on www.VRPornUpdates.com, Defendants displayed portions of LTI's copyrighted content and

19

trademarks.  Clicking on the title of LTI's content sends a user to SLR's website www.SexLikeReal.com and selection of the "NaughtyAmerica VR" button would lead to a page within www.VRPornUpdates.com, a site Defendants operate.

78.     Accordingly, Defendants used LTI's registered trademarks to sell, offer for sale, distribute, and/or advertise SLR's goods and services in a way that actually was or was likely to cause consumer confusion that LTI produced, owned, sponsored, or in some way was affiliated with SLR's goods or services in violation of 15 U.S.C. § 1114(1)(a).  An expansive Google search of LTI's works reflects the improper commingling of the parties' marks as a result of Defendants' infringement and evidences this confusion.

79.     As a direct and proximate cause of Defendants' infringement, LTI has sustained actual damages in a sum not presently ascertained, but subject to proof at trial, and in excess of the jurisdictional minimum of this Court.

80.     Defendants' infringements were committed intentionally and warrant an award of treble damages pursuant to 15 U.S.C. § 1117(b).

81.     Further, if Defendants' infringing activities continue, LTI will suffer immediate, serious and irreparable injury to its reputation and market for its goods and services, for which monetary damages alone are inadequate.

### SIXTH CLAIM FOR UNFAIR COMPETITION

### (Against All Defendants)

82.     LTI realleges and incorporates each and every allegation set forth in paragraphs 1 through 81 as though fully set forth herein.

83.     Defendants blatantly passed LTI's works off to the public as its own by affixing its brand and trademarks to LTI's materials and then placing them in commerce.  Defendants further misrepresented that an affiliation exists between LTI and SLR's goods and services by marketing the SLR App and third-party content in conjunction with LTI's works.  Defendants also hid links to its website under LTI's trademarks and deceived consumers into believing SLR hosted full-length copies of LTI's videos.  Compounding this deception are the search engine results for LTI's works

20

that reflect the false impression that SLR produces, owns, or is somehow affiliated with LTI's goods and services.

84.     Defendants' engagement in these fraudulent business practices and deceptive, untrue and/or misleading advertising is likely to mislead the public and constitutes unfair competition.

85.     As a direct and proximate cause of Defendants' unfair business practices, LTI has sustained significant market harm in excess of the jurisdictional minimum of this Court.  Pursuant to Cal. Bus. & Prof. Code § 17200, *et seq.*, LTI is entitled to restitution and disgorgement of Defendants' profits.

86.     Further, if Defendants' unfair business practices continue, LTI will suffer immediate, serious, and irreparable injury to its reputation and market for its goods and services, for which monetary damages alone are inadequate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

### FIRST AND SECOND CLAIMS

1.  For compensatory, special and consequential damages in an amount to be determined at trial;

2.  For prejudgment interest according to law;

3.  For an order awarding LTI costs and disbursements of this action; and

4.  For such other relief as the Court deems just and proper.

### THIRD CLAIM

1.  For an order permanently enjoining Defendants from continuing to infringe LTI's copyrighted works;

2.  For an order requiring Defendants to delete and permanently remove all digital media files relating to LTI's copyrighted works still remaining within Defendants' possession, custody or control;

3.  For an award of actual damages sustained by LTI and Defendants' profits attributable to the infringement pursuant to 17 U.S.C. § 504(a) and (b);

COMPLAINT
ACTIVE\64840172.v1-9/17/18

CASE NO._____

4. For an award of statutory damages per work infringed pursuant to 17 U.S.C. § 504(a) and (c);

5. For an award of LTI's reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

6. For such other relief as the Court deems just and proper.

## FOURTH AND FIFTH CLAIMS

1. For an order permanently enjoining Defendants from continuing to infringe LTI's registered trademarks and affixing Defendants' brand, logos, and/or trademarks on LTI's works, pursuant to 15 U.S.C. § 1116(a);

2. For an award of actual damages sustained by LTI, disgorgement of all profits gained as a result of Defendants' infringement, and the costs of this action pursuant to 15 U.S.C. § 1117(a);

3. For an award of treble damages pursuant to 15 U.S.C. § 1117(b);

4. For an award of LTI's reasonable attorneys' fees pursuant to 17 U.S.C. § 1117(a); and

5. For such other relief as the Court deems just and proper.

## SIXTH CLAIM

1. For an order permanently enjoining Defendants from continuing to engage in the fraudulent business practices and deceptive advertising described herein;

2. For an order of restitution and disgorgement of profits; and

3. For such other relief as the Court deems just and proper.


Dated:  September 17, 2018                    FOX ROTHSCHILD LLP


                          By   _/s/ Conrad Wilton_____
                               Lincoln Bandlow
                               Conrad B. Wilton
                               Attorney for Plaintiff
                               LA TOURAINE, INC. *dba* NAUGHTY AMERICA

COMPLAINT                                                CASE NO._____
ACTIVE\64840172.v1-9/17/18

1

**JURY DEMAND**

2      Pursuant to Fed. R. Civ. P. Rule 38, LTI demands a jury trial of all claims alleged in this

3  complaint or any amended complaint.

4

Dated:  September 17, 2018                    FOX ROTHSCHILD LLP

5

6                                    By   */s/ Conrad Wilton*                     
                                          Lincoln Bandlow
7                                         Conrad B. Wilton
8                                         Attorney for Plaintiff LA TOURAINE, INC. *dba*
                                          NAUGHTY AMERICA
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT                                                          CASE NO._____
ACTIVE\64840172.v1-9/17/18