# EXHIBIT A



Constellation Place
10250 Constellation Blvd, Suite 900
Los Angeles, CA 90067
Tel (310) 598-4150  Fax (310) 556-9828
www.foxrothschild.com

LINCOLN D. BANDLOW
Direct No:  310.228.2913
Email: LBandlow@FoxRothschild.com

November 27, 2018

**VIA EMAIL**

| | |
|---|---|
| Val Gurvits, Esq.<br>Boston Law Group, PC<br>825 Beacon St., Suite 20<br>Newton Centre, MA 02459<br>vgurvits@bostonlawgroup.com | Evan Fray-Witzer, Esq.<br>Ciampa Fray-Witzer, LLP<br>20 Park Plaza, Suite 505<br>Boston, MA 02116<br>Evan@CFWLegal.com |

Matthew Shayefar, Esq.
Law Office of Matthew Shayefar, PC
925 N. La Brea Ave.
West Hollywood, CA 90038
matt@shayefar.com

Re:    *La Touraine, Inc. v. V.R.S. Virtual Reality Technology, Ltd., et al.*

Counsel:

      We have reviewed the Answer, Affirmative Defenses and Counterclaim ("Counterclaim") your client V.R.S. Virtual Reality Technology, Ltd. ("VRS") filed in the above-entitled action in response to our client La Touraine, Inc.'s ("LTI") Complaint.  VRS' fraud and unfair competition claims are insufficiently pled, as are its affirmative defenses asserting copyright misuse and unclean hands.

**Fraud and Unfair Competition**

      In its Counterclaim, VRS does not deny exploiting LTI's intellectual property and exceeding the bounds of the affiliate agreement.  Rather, VRS attributes its conduct to LTI claiming it "explicitly permitted VRS to make use of LTI's promotional materials in ways that were beyond the terms of the affiliate agreement between the parties."  Counterclaim at ¶ 23.  VRS repeatedly references these "false representations" throughout its Counterclaim and relies



Val Gurvits, Esq.
Matthew Shayefar, Esq.
Evan Fray-Witzer, Esq.
November 27, 2018
Page 2

on them in contending LTI defrauded VRS and is engaged in fraudulent practices with respect to other affiliates.  However, VRS fails to provide the necessary factual detail to survive a motion to dismiss.  *See* Fed. R. Civ. P. 9(b) (requiring a party to "state with particularity the circumstances constituting fraud or mistake"); *Kearns v. Ford Motor Co.*, 567 F. 3d 1120, 1125 (9th Cir. 2009) (finding "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged.").

VRS fails to plead who made these representations, when they were made, via what medium, and the substance of these communications.  Rather, VRS simply concludes that someone speaking on behalf of LTI at some time in some way communicated a message to someone representing VRS that VRS can engage in widespread rampant infringement of LTI's copyrights and trademarks in clear violation of intellectual property law and in breach of multiple provisions under the parties' affiliate agreement.  Such a conclusory allegation is so hopelessly vague it arguably falls short of the basic notice pleading requirement, let alone the heightened pleading standard the federal rules require for asserting fraudulent activities.

Moreover, VRS alleges LTI has engaged in a practice of bringing baseless actions against multiple affiliates for copyright and trademark infringement to "bully" the affiliates to abandon claims for unpaid commissions.  Counterclaim at ¶¶ 39-42.  However, VRS has failed to name one affiliate or vendor (other than itself) that fell victim to this alleged scheme, nor could VRS name any lawsuit LTI has initiated against another affiliate to escape commission payments on the pretext of copyright infringement.  Rather, VRS concludes that LTI is engaging in these activities on a grand scale but pleads no factual matter supporting this sweeping allegation.  A claim for fraudulent business practices in federal court requires more factual support than the equivalent of "It happened to me so it must be happening to others in the exact same way."  This cause of action, as pled, should be dismissed.

**<u>Copyright Misuse</u>**

Finally, with respect to VRS' affirmative defense asserting LTI has engaged in "copyright misuse" by bringing this action as a means of getting VRS to abandon its claim for unpaid commissions, this defense is utterly meritless for two reasons.

First, the claim is bogus and your client knows it.  LTI is suing, *inter alia*, for VRS' widespread infringement of **152 of its copyrighted works** (infringement which persisted for **over a year** after LTI formally terminated the affiliate agreement) and for VRS purposely diluting LTI's brand by falsely designating the origin of LTI's works.  This is not a baseless action brought simply to intimidate VRS into abandoning its claim to a relatively nominal



Val Gurvits, Esq.
Matthew Shayefar, Esq.
Evan Fray-Witzer, Esq.
November 27, 2018
Page 3

$70,000 in commissions.  LTI suffered real market harm by VRS' unbridled disregard for LTI's intellectual property rights, and VRS must answer for it.[1]

       Second, even if LTI filed this action for the sole purpose of inducing VRS to abandon its claims for unpaid commissions (which is categorically false), this action does not constitute copyright misuse.  To demonstrate copyright misuse, VRS must show LTI is using its copyrights to "secur[e] an exclusive right or limited monopoly not granted by the Copyright Office," such as restraining the development of competing products.  *Apple Inc. v. Psystar Corp.*, 658 F. 3d 1150, 1159 (9th Cir. 2011) (finding copyright misuse prevents holders from using the conditions to "stifle competition" but not to control the use of copyrighted material).  Conversely, a plaintiff who seeks to control the reproduction and distribution of its copyrighted works is not misusing its copyrights, nor is a plaintiff who solely seeks remedies made expressly available by statute.  *See UMG Recordings, Inc. v. MP3.Com, Inc.*, 92 F. Supp. 2d 349, 352 (S.D.N.Y. 2000) (holding "a [copyright holder's] exclusive rights, derived from the Constitution and the Copyright Act, include the right, within broad limits, to curb the development of such a derivative market by refusing to license a copyrighted work or by doing so only on terms the copyright owner finds acceptable.").

       Here, LTI's Complaint constitutes nothing more than an attempt to control the reproduction and distribution of LTI's copyrighted works – which are exclusive rights of copyright holders.  In no way can LTI's suit be considered an attempt to restrain the production of competing adult films and related products.  Further, LTI seeks statutory damages and injunctive relief which are remedies expressly authorized by the Copyright Act.  Thus, even if VRS' allegations are taken to be true, they do not trigger a copyright misuse defense.  No court could find LTI guilty of misusing its copyrights by suing for their widespread and wholesale infringement on the sole basis that VRS speculates LTI filed this lawsuit with sinister intent.

       As our client's response is due on December 3, 2018, we ask that we can meet and confer with respect to the foregoing no later than **November 29, 2018**.  Please inform us which times work best for you on or before the 29th so that we schedule a call.

---

[1] Plus, if LTI was solely interested in extinguishing VRS' claims for unpaid commissions, it would have accepted VRS' settlement offer for a mutual release of all claims rather than spend tens of thousands of dollars in service and litigation expenses.  The harm that VRS' infringement has caused LTI exponentially exceeds whatever commissions VRS claims LTI failed to pay.



Val Gurvits, Esq.
Matthew Shayefar, Esq.
Evan Fray-Witzer, Esq.
November 27, 2018
Page 4

      This is not intended as a full and complete recitation of the facts and law pertinent to this matter, and our client expressly reserves without waiver all of its rights, remedies, defenses, and positions, whether or not enumerated herein.

      Sincerely,

      Lincoln D. Bandlow