Matthew Shayefar (SBN 289685)
Law Office of Matthew Shayefar, PC
925 N La Brea Ave
West Hollywood, California 90038
Tel: 323-948-8101 | Fax: 323-978-5556
matt@shayefar.com

Val Gurvits (MA 643572 - *pro hac vice* forthcoming)
Boston Law Group, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Tel: 617-928-1804 | Fax: 617-928-1802
vgurvits@bostonlawgroup.com

*Attorney for Defendant V.R.S. Virtual Reality Technology Ltd.*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA TOURAINE, INC.,<br>    Plaintiff<br><br>vs.<br><br>IVAN VARKO, and<br>V.R.S. VIRTUAL REALITY<br>TECHNOLOGY LTD,<br>    Defendants | Case No.: 3:18-cv-02160-BEN-NLS<br><br>**DEFENDANT V.R.S VIRTUAL REALITY TECHNOLOGY LTD.'S OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS VRS' FOURTH AND FIFTH COUNTERCLAIMS AND TO STRIKE VRS'S SECOND AFFIRMATIVE DEFENSE** |
| V.R.S. VIRTUAL REALITY<br>TECHNOLOGY LTD.,<br>    Counterclaim-Plaintiff,<br><br>vs.<br><br>LA TOURAINE, INC.,<br>    Counterclaim-Defendant | Judge:      Hon. Roger T. Benitez<br>Date:       March 11, 2019<br>Time:       10:30am<br>Courtroom: 5A |

# **TABLE OF CONTENTS**

| Section | Page |
|---|---|
| TABLE OF CONTENTS | ii |
| TABLE OF AUTHORITIES | iii |
| MEMORANDUM OF POINTS AND AUTHORITIES | 1 |
| I.   Factual Background | 1 |
| II.   Legal Argument | 3 |
| A.   VRS Has Pled with Sufficient Particularity its Cause of Action for Fraud Against LTI | 3 |
| B.   LTI Misstates VRS's Unlawful and Unfair Business Practices Cause of Action and Misstates the Pleading Standards | 5 |
| C.   VRS Has Sufficiently Pled an Affirmative Defense for Copyright Misuse Because LTI's Actions Constitute the Exemplary Actions for the Applicability of the Affirmative Defense | 8 |
| D.   To the Extent the Pleadings are Deficient, VRS Should be Permitted to Amend Them | 11 |
| III.   Conclusion | 13 |
| CERTIFICATE OF SERVICE | 14 |

# TABLE OF AUTHORITIES

## Cases

*Aliya Medcare Finance, LLC v. Nickell*, 156 F.Supp. 1105 (C.D. Cal. 2015) ....... 6

*Allen v. City of Beverly Hills*, 911 F.2d 367 (9th Cir. 1990) ............................... 12

*Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079 (9th Cir. 2005) ......................... 9

*Apple Inc. v. Psystar Corp.*, 658 F.3d 1150 (9th Cir. 2011) .................................. 9

*Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149 (9th Cir. 1989) ............. 12

*Cal-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20
    Cal.4th 163 (1999) ...................................................................................... 7

*Disney Enterprises, Inc. v. Redbox Automated Retail, LLC*, 2018 WL
    1942139 (C.D. Cal. Feb. 20, 2018) ........................................................... 11

*Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718 (9th Cir. 2007) ................... 6

*McKell v. Washington Mutual, Inc.*, 142 Cal.App.4th 1457 (2006) ...................... 7

*MDY Industries, LLC v. Blizzard Entertainment, Inc.*, 629 F.3d 928 (9th Cir.
    2010) ........................................................................................................ 10

*Microsoft Corp. v. Jesse's Computers & Repair, Inc.*, 211 F.R.D. 681 (M.D.
    Fla. 2002) ................................................................................................. 10

*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014) ........................3-4

*Omega S.A. v. Costco Wholesale Corporation*, 776 F.3d 692 (9th Cir. 2015) ..... 11

*Oracle USA, Inc. v. Rimini Street, Inc.*, 879 F.3d 948 (9th Cir. 2018) .................. 9

*Pemberton v. Nationstar Mortgage LLC*, 331 F.Supp.3d 1018 (S.D. Cal.
    2018) .......................................................................................................... 6

*Practice Management Information Corp. v. American Medical Association*,
    121 F.3d 516 (9th Cir. 1997) ...................................................................... 9

*Saunders v. Superior Court*, 27 Cal.App.4th 832 (1994) ..................................... 8

*Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035 (9th Cir. 2010) ................................................................................ 8

*Vernor v. Autodesk, Inc.*, 621 F.3d 1102 (9th Cir. 2010) ........................................ 9

## **Statutes**

California Business and Professions Code Section 17000 *et seq* ....................... 5-6

California Business and Professions Code Section 17200 .................................... 6

California Business and Professions Code Section 1770 ..................................... 7

## **Rules**

Fed. R. Civ. P. 9 ................................................................................ 3, 5-6

Fed. R. Civ. P. 15 ................................................................................. 12

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant/Counterclaim-Plaintiff V.R.S. Virtual Reality Technology Ltd. ("**VRS**") hereby opposes Defendant/Counterclaim-Defendant La Touraine, Inc.'s ("**LTI**") Motion to Dismiss the Fourth and Fifth Counterclaims, and to Strike the Second Affirmative Defense alleged by Defendant Virtual Reality Technology Ltd. (the "**Motion**").

The Motion should be denied because it fails to acknowledge the particularities of the fraud alleged by VRS in its Counterclaims. It also sets forth an incorrect standard of law relating to VRS's cause of action for unlawful and unfair business practices. The Motion must also be denied to the extent that it seeks to strike VRS's affirmative defense of copyright misuse because LTI's actions as alleged in this litigation constitute the most emblematic form of copyright misuse: improperly using copyrights to gain an advantage over a legitimate competitor through a licensing agreement. However, to the extent that the Court believes that any of VRS's causes of actions or its affirmative defense for copyright misuse are not adequately plead, VRS should be permitted to amend its pleadings to remedy any such inadequacies.

## I.     Factual Background

The following summary of facts are taken from VRS's Counterclaims and relate to both VRS's Counterclaims and its affirmative defense for copyright misuse, which incorporated by reference VRS's Counterclaims.

LTI is a producer of adult entertainment videos and the operator of websites where users may purchase subscriptions to view the videos. Counterclaim, ¶ 9. VRS is the successor-in-interest to an affiliate relationship and agreement (the "**Affiliate Agreement**") first entered into with LTI in 2008. *Id.*, ¶ 10. In 2008, LTI induced VRS into entering the affiliate relationship with LTI on the promise that LTI would pay VRS 60% of all revenues generated by users that VRS referred

to LTI's websites.  *Id.*, ¶ 13.  As part of the relationship, LTI desired and permitted VRS to distribute clips of LTI's content throughout the Internet because it would drive traffic and revenue to LTI's websites.  *Id.*, ¶ 14.  VRS used LTI's content (including short clips of LTI's videos that LTI made available to VRS) exclusively to promote LTI's website and no other websites, services or businesses.  *Id.*, ¶ 17. Even as set forth in the Affiliate Agreement attached to the Complaint, LTI was obligated to continue paying VRS for the lifetime of any users referred to it by VRS – even if VRS stopped actively marketing for LTI.

Throughout the affiliate relationship between LTI and VRS, LTI induced and explicitly permitted VRS to make use of LTI's promotional materials in ways that were beyond the terms of the Affiliate Agreement.  Counterclaims, ¶ 23-25. Through its conduct and explicit actions, LTI made clear that many of the restrictive terms of the Affiliate Agreement relating to promotional activities were not intended to be followed by VRS.  *Id.*, ¶ 27.

While the parties worked together for years, things began to change in 2015. In 2015, VRS launched a new website and service called Sex Like Real ("**SLR**"). *Id.*, ¶ 18.  While VRS continued to promote LTI on SLR, it also competed with LTI because SLR contained content from other adult content creators.  LTI saw how successful VRS was with SLR and asked VRS to more heavily promote LTI's content on the service.  *Id.*, ¶¶ 19-20, 29.  Over approximately two years, VRS, through SLR, generated approximately $300,000 in gross sales for LTI.  *Id.*, ¶ 21.

It appears that eventually LTI's jealousy of VRS for its success with SLR overcame LTI and it sought to use the Affiliate Agreement and its copyrights against VRS, which it now saw solely as a competitor.  LTI's first step was to simply stop paying VRS for $70,000 in commissions.  *Id.*, ¶¶ 30-33.  When VRS obtained legal counsel to recoup the owed amounts, LTI, for the very first time in the long history of the ongoing relationship, claimed that VRS was violating the

1  Affiliate Agreement and that VRS had infringed LTI's copyrights and trademarks.

2  *Id.*, ¶¶ 33-35.  Despite LTI's newly concocted allegations of breach and

3  infringement, at all times VRS used LTI's promotional content in compliance with

4  LTI's explicit and implicit instructions, desires and consent.  *Id.*, ¶ 36.

5       When VRS continued to seek payment for the outstanding amounts (now

6  rising to over $100,000), LTI filed the Complaint in this action.  *Id.*, ¶ 39.  VRS

7  answered the Complaint, asserting an affirmative defense of copyright misuse.

8  VRS also filed Counterclaims against LTI for (1) Breach of Contract, (2) Breach of

9  Covenant of Good Faith and Fair Dealing, (3) Unjust Enrichment, (4) Fraud, and

10  (5) Unlawful and Unfair Business Practices under California law.

11  **II.    Legal Argument**

12       **A.    VRS Has Pled with Sufficient Particularity its Cause of Action for**

13            **Fraud Against LTI**

14       LTI's Motion claims that VRS has failed to allege with sufficient

15  particularity VRS's cause of action for fraud under Fed. R. Civ. P. 9(b).  LTI's

16  arguments are unavailing.

17       VRS has alleged fraud in the inducement of entering into the Affiliate

18  Agreement with LTI – specifically, that LTI would pay VRS commissions for the

19  promotional work that VRS performed for the benefit of LTI.  Counterclaims, ¶ 61.

20  All of the "who, what, when, where, and how" of this fraud by LTI has been plead

21  with particularity in the pleadings.  The Affiliate Agreement "was a click-wrap

22  contract ... and consented to by ... clicking a button to submit [the] application to

23  become an affiliate of LTI.  Complaint, ¶ 16.  Being a "click-warp" agreement,

24  there was no particular person on LTI's side that made the fraudulent

25  representations in the Agreement – it was just LTI itself.  *See, e.g., Nguyen v.*

26  *Barnes & Noble Inc.*, 763 F.3d 1171, 1175-76 (9th Cir. 2014) ("Contracts formed

27  on the Internet come primarily in two flavors: 'clickwrap' (or 'click-through')

VRS Opposition to Motion to Dismiss/Strike    Case No. 3:18-cv-02160-BEN-NLS

agreements, in which website users are required to click on an 'I agree' box after being presented with a list of terms and conditions of use; and 'browsewrap' agreements, where a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen."). The "what" of the fraud is exactly as alleged in the Counterclaims – that "LTI represented to VRS that LTI would pay VRS commissions for the promotional work that VRS performed for the benefit of LTI." Counterclaims, ¶ 61. *See*, *also*, Counterclaims, ¶ 13 ("In or about 2008, LTI induced VRS into entering the affiliate relationship with LTI on the promise that LTI would pay VRS 60% of all revenues generated by users that VRS referred to LTI's websites. These revenues were promised to be paid for the 'lifetime' of the referred users."). The "when" of this fraud was in 2008. *Id.*, ¶ 13. The where and how was, again, through LTI's own website as it was a "click-wrap" agreement. Accordingly, the heightened pleading standards for LTI's fraud have been satisfied by the Counterclaims.

VRS has also alleged that LTI engaged in fraud where "LTI represented to VRS that VRS could use its promotional materials in ways that were not explicitly permitted pursuant to the affiliate agreement between the parties, but that were otherwise explicitly or implicitly permitted or consented to by LTI." Counterclaims, ¶ 62. This is the "what" of the other fraud committed by LTI. *See*, *also*, *Id.*, ¶¶ 14, 17, 19-20, 22-25, 27-29, 34-36, and 41(b) (setting forth further details of this fraud by LTI). VRS has also satisfied the heightened pleading standards for this portion of LTI's fraud. VRS has alleged that this fraud was continuing throughout the relationship of the parties from 2008 when VRS entered into the Affiliate Agreement until LTI unilaterally terminated it in the middle of 2017. *Id.* The fraud was perpetrated through LTI's personnel, including, without limitation, LTI's CEO, who would visit the SLR website on a nearly daily basis.

1    *Id.*, ¶ 19.[1]  And given that the relationship between LTI and SLR spanned nearly a

2    decade, and the parties were on other sides of the world from each other (LTI is

3    apparently based in the San Diego area and VRS is registered in Cyprus), the

4    communications took place through emails, instant messenger conversations and

5    voice/video communications from each of their respective places of work.  All of

6    this is implicitly, if not explicitly, plead in the Counterclaims.[2]

7         Accordingly, VRS has satisfied the heightened pleading standards for fraud

8    under Fed. R. Civ. P. 9(b) and VRS's cause of action for fraud should not be

9    dismissed.

10        **B.    LTI Misstates VRS's Unlawful and Unfair Business Practices**

11             **Cause of Action and Misstates the Pleading Standards**

12        LTI also argues that VRS's cause of action for Unlawful and Unfair

13   Business Practices under California Business and Professions Code Section 17000

14   *et seq* (California's Unfair Competition Law or "**UCL**") also fails to comply with

15   the heightened pleading standards of Fed. R. Civ. P. 9.  However, Rule 9 does not

16   apply to the UCL and accordingly there is no heightened pleading standard for

17   causes of action under the UCL.

18

19

20   _____

21   [1] In VRS's initial disclosures already served in this case, a copy of which is
     attached hereto as <u>Exhibit 1</u>, VRS disclosed the names of the other LTI personnel

22   that actively induced VRS to take the actions that it did – namely, Scott Maio, the
     marketing manager for LTI, and Mike "P," the affiliate manager for LTI.

23   Accordingly, to the extent that the Court finds that the Counterclaims do not state
     the names of the persons making the fraudulent statements with enough specificity,

24   amendment to add additional details would be warranted and would not be futile

25   because VRS has already disclosed the additional details sought.
     [2] And again, to the extent that the Court finds that the Counterclaims do not

26   currently satisfy the heightened pleading standards, VRS can easily provide further

27   details in an amended Counterclaims should the Court find it necessary and grant
     leave to amend.

1    VRS's cause of action alleges that "By its conduct as set forth [in the
2    Counterclaims and as summarized above], LTI has willfully or knowingly engaged
3    in fraudulent, deceptive, unlawful, unfair and/or other wrongful acts and
4    practices." Counterclaims, ¶ 68. To the extent that VRS's UCL claim relies on
5    fraud, and Fed. R. Civ. P. 9(b) is implicated, VRS has alleged the fraud with
6    sufficient particularity as detailed above.

7    However, VRS does not rely solely on fraud as the basis for its UCL claim.
8    Specifically, VRS alleges that LTI engaged in "deceptive, unlawful, unfair and/or
9    other wrongful acts and practices." Counterclaims, ¶ 68. Therefore, even if the
10   Court ever finds that there was no fraud, VRS could still succeed on the basis of
11   finding that the allegations against LTI constitute deceptive, unlawful, unfair or
12   other wrongful acts and practices. *See Aliya Medcare Finance, LLC v. Nickell*, 156
13   F.Supp. 1105, 1138 (C.D. Cal. 2015) ("The UCL prohibits any unlawful, unfair or
14   fraudulent business act or practice and unfair, deceptive, untrue or misleading
15   advertising.... An act can be alleged to violate any or all of the three prongs of the
16   UCL – unlawful, unfair, or fraudulent.... The law is sweeping, embracing anything
17   that can properly be called a business practice and [that is] at the same time ...
18   forbidden by law." (multiple internal quotation marks and citations omitted));
19   *Pemberton v. Nationstar Mortgage LLC*, 331 F.Supp.3d 1018, 1047 (S.D. Cal.
20   2018) ("The Pembertons assert a claim against Nationstar under California's
21   Unfair Competition Law ('UCL'), which prohibits 'any unlawful, unfair or
22   fraudulent act or practice.' ... 'Each prong of the UCL is a separate and distinct
23   theory of liability' and 'an independent basis for relief.'" (quoting Cal. Bus. &
24   Prof. Code § 17200 and *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731
25   (9th Cir. 2007))).

26   The allegations in the Counterclaims obviously set forth a cause of action for
27   unlawful and unfair business acts or practices. The Counterclaims allege that LTI

1 induced VRS into performing significant work in the favor of LTI with the

2 expectation that it would receive lifetime commissions from LTI.  The

3 Counterclaims allege that VRS did all the work that it did under the direction of

4 and with the consent of LTI.  Then, when LTI wanted to stop paying VRS because

5 it got all that it was going to get (and because LTI now saw VRS as a competitor

6 rather than an asset) it unilaterally decided it would stop paying VRS the

7 commissions it promised and instead claimed that everything VRS was doing

8 under LTI's direction constituted copyright and trademark infringement.  LTI's

9 actions are clearly unlawful and unfair.

10    LTI's actions are unlawful because they are in violation of law.

11 Specifically, but without limitation, LTI has represented to VRS "that a transaction

12 convers or involves rights, remedies, or obligations that it does not have or

13 involve" in connection with a transaction intended to result in the sale of services

14 to a consumer (namely the sale of LTI's memberships to consumers that VRS

15 referred to LTI) in violation of California Civil Code Section 1770(a)(14).  *See*

16 *McKell v. Washington Mutual, Inc.*, 142 Cal.App.4th 1457, 1475 (2006) ("Even if

17 the violation of another law does not create a private right of action, if the violation

18 constitutes unfair competition, it is actionable.").

19    Moreover, LTI's actions squarely fall under the California Supreme Court's

20 definition of "unfair" practices: "When a plaintiff who claims to have suffered

21 injury from a direct competitor's 'unfair' act or practice invokes section 17200, the

22 word 'unfair' in that section means conduct that threatens an incipient violation of

23 an antitrust law, or violates the policy or spirit of one of those laws because its

24 effects are comparable to or the same as a violation of the law, or otherwise

25 significantly threatens or harms competition."  *Cal-Tech Communications, Inc. v.*

26 *Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 187 (1999).  In this case,

27

VRS is alleging that LTI has engaged in wrongful acts that threaten and harm VRS as a competitor.

Alternatively, an action can be considered unfair as long as the harm to the victim outweighs its benefit.  *See Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010) ("'Unfair' simply means any practice whose harm to the victim outweighs its benefits." (citing *Saunders v. Superior Court*, 27 Cal.App.4th 832, 839 (1994))).  In this case, VRS alleges significant harm – not just LTI's failure to pay the commissions due but also now facing a copyright and trademark lawsuit for doing exactly what LTI told it to do.  And because there is no benefit to LTI taking these actions, its actions are clearly unfair.

Accordingly, VRS has sufficiently pled its cause of action for unlawful and unfair business practices and LTI's Motion should be denied.[3]

**C.     VRS Has Sufficiently Pled an Affirmative Defense for Copyright Misuse Because LTI's Actions Constitute the Exemplary Actions for the Applicability of the Affirmative Defense**

This is a case where LTI granted VRS a limited license to its copyrighted works under the Affiliate Agreement, then explicitly induced VRS to use its copyrighted works in ways outside of the confines of the Affiliate Agreement, then alleged that VRS violated the copyrights solely to deny paying VRS commissions

_____

[3] As a final matter, throughout the Motion LTI alleges that VRS "is attempting to transform a private dispute between an adult entertainment company and a rogue affiliate into a pseudo-class action in which LTI is alleged to have defrauded a series of unidentified affiliates and vendors by filing a series of unidentified lawsuits."  Motion, p. 10.  While VRS has alleged that other parties have been harmed by VRS's actions to show that this is part of a pattern of misconduct, under no circumstances is VRS alleging a class-action lawsuit and the identification of any third-parties harmed by LTI's conduct is not in any way necessary for the proper pleading of any of VRS's counterclaims.  VRS is not seeking remedies for any wrongs that LTI has committed against third-parties nor is it bringing any claims on their behalf.

on its work because VRS suddenly became a competitor to LTI.  If this conduct does not constitute copyright misuse, then there is no affirmative defense of copyright misuse.[4]

Unfortunately for LTI, the copyright misuse defense has been explicitly recognized by the Ninth Circuit and it covers exactly the sort of conduct alleged in this case.

The Ninth Circuit explicitly adopted copyright misuse as a defense to copyright infringement in *Practice Management Information Corp. v. American Medical Association*, 121 F.3d 516, 520 (9th Cir. 1997), *amended by* 133 F.3d 1140 (9th Cir. 1998).  "The copyright misuse doctrine prevents holders of copyrights 'from leveraging their limited monopoly to allow them control of areas outside the monopoly.'"  *Oracle USA, Inc. v. Rimini Street, Inc*., 879 F.3d 948, 957 (9th Cir. 2018), *cert. granted*, 139 S.Ct. 52, 2018 WL 2463517 (2018) (quoting *Apple Inc. v. Psystar Corp*., 658 F.3d 1150, 1157 (9th Cir. 2011)).  Copyright misuse is an equitable defense to copyright infringement.  *Vernor v. Autodesk, Inc*., 621 F.3d 1102, 1115 (9th Cir. 2010).  It does not apply when there is no allegation of copyright infringement.  *Altera Corp. v. Clear Logic, Inc*., 424 F.3d 1079, 1090 (9th Cir. 2005).  Copyright misuse precludes enforcement of a copyright during the period of misuse, but it does not invalidate the copyright.  *Practice Mgmt*., 121 F.3d at 520 n.9 (finding copyright misuse when the copyright holder's license agreement gave the copyright holder a "substantial and unfair advantage over its competitors").

---

[4] Contrary to LTI's arguments in its Motion, VRS's affirmative defense of copyright misuse does not rely solely on LTI filing this lawsuit for copyright infringement – it relies on the fact that LTI is using its copyrights to deny paying VRS monies it unquestionably owes under the Affiliate Agreement and to bully a competitor out of business after explicitly telling it that it could use its copyrights.

1    VRS submits that LTI's actions alleged in the pleadings constitute copyright
2    misuse.  And to the extent that LTI may argue that VRS's allegations can be
3    distinguished from Ninth Circuit case law on the subject, it should be noted that the
4    Ninth Circuit has explicitly held that "the contours of [the defense] are still being
5    defined."  *MDY Industries, LLC v. Blizzard Entertainment, Inc.*, 629 F.3d 928, 941
6    (9th Cir. 2010).

7    Looking outside of the Ninth Circuit, some courts have analogized the
8    copyright misuse defense to the unclean hands defense: "In order satisfactorily to
9    assert the copyright misuse defense, the Defendant would need to assert facts
10   analogous to the defense of 'unclean hands,' as well as assert a connection between
11   that activity and the Defendant's infringing acts."  *Microsoft Corp. v. Jesse's*
12   *Computers & Repair, Inc.*, 211 F.R.D. 681, 685 (M.D. Fla. 2002).  Applied to this
13   case, LTI's unclean hands are that it intentionally and explicitly induced VRS into
14   using its copyrighted works and then later alleged that those exact acts infringed
15   LTI's copyrights.

16   On the other hand, LTI's arguments as to why copyright misuse is not
17   applicable are misguided.  First, LTI claims that VRS cannot plead the copyright
18   misuse defense because "LTI seeks to protect its copyrights from widespread
19   wholesale infringement by filing suit against the parties who have committed this
20   infringement."  Motion, pp. 8-9. This is a bewildering argument because the
21   copyright misuse doctrine can *only* be applied where there is a cause of action for
22   copyright infringement.  *See, e.g., MDY Industries*, 629 F.3d at 941 ("The remedy
23   for copyright misuse is to deny the copyright holder the right to enforce its
24   copyright during the period of misuse.  Since MDY does not infringe, we do not
25   consider whether Blizzard committed copyright misuse.").

26   LTI also claims that there cannot be misuse of copyright because "In no way
27   can LTI's suit be considered an attempt to restrain the production of competing

VRS Opposition to Motion to Dismiss/Strike     Case No. 3:18-cv-02160-BEN-NLS

adult films and related products."  Motion, p. 8.  First, that argument is clearly wrong as VRS is a competitor to LTI and LTI's conduct is a means for it to hard and damage VRS.  Second, the courts have soundly rejected the claim that copyright misuse must be grounded in anticompetitive behavior.  *See*, *e.g.*, *Disney Enterprises, Inc. v. Redbox Automated Retail, LLC*, 2018 WL 1942139, *6 (C.D. Cal. Feb. 20, 2018) ("[C]opyright misuse need not even be grounded in anticompetitive behavior...." (citing *Omega S.A. v. Costco Wholesale Corporation*, 776 F.3d 692, 699-700 (9th Cir. 2015) (Wardlaw, J. concurring))).

Finally, given the still evolving nature of the copyright misuse doctrine in the Ninth Circuit, it would be unjust for the Court to dismiss VRS's affirmative defense for it before the entire record in this case has been determined.  The appropriate place for any attempt by LTI to rid this case of the affirmative defense should be with a motion for summary judgment or in a motion *in limine*.  But, at this point, VRS has alleged a cognizable affirmative defense for copyright misuse that should be allowed to proceed to litigation.

Accordingly, VRS has sufficiently plead the affirmative defense of copyright misuse, a defense that applies to this case, and the affirmative defense should not be stricken.

### D.   To the Extent the Pleadings are Deficient, VRS Should be Permitted to Amend Them

As its final argument, LTI argues that VRS should not have leave to amend its Affirmative Defenses or Counterclaims.  Of course, VRS argues that there is no need to amend either because they are sufficiently pled.  But, to the extent that the Court decides otherwise, VRS should be permitted to amend its pleadings and hereby requests the same.

LTI's argument that VRS should not be permitted to amend its pleadings is both legally and factually baseless.  LTI quotes the proper test for whether leave

should be amended, then fails to even attempt to satisfy the factors, instead making misstatements about what VRS could or could not do in the event it was given leave to amend.  LTI's argument should be disregarded.

In any case, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).  "Five factors are frequently used to assess the propriety of a motion for leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint." *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (citing *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989)).  Not a single one of these factors however counsel against granting VRS leave to amend its pleadings in the event it is necessary.

*First*, there is no evidence or even allegations of bad faith on behalf of VRS in bringing its pleadings.  *Second*, there has been no undue delay by VRS.  To the extent any amendment is needed, VRS is hereby seeking it before the Court has even made the decision that an amendment would be necessary.  Moreover, the Court's scheduling order permits amendments of pleadings up until June 28, 2019 – four months from now.  D.E. 21, ¶ 1.  *Third*, there is no undue prejudice to LTI whatsoever.  LTI only argues that it would have to then argue the merits of the amended pleadings, which is exactly the case any time any pleadings are ever amended.  If that was enough to prohibit leave to amend, then no amendments would ever be granted.  *Fourth*, VRS has never previously amended its pleadings.

And *fifth*, an amendment would not be futile.  LTI's argument is that the Counterclaims do not specify exactly which of its personnel made the fraudulent statements to VRS and in what manner.  But VRS has already provided the names of those persons to LTI in its initial disclosures and can easily point to specific conversations throughout the years with those individuals in any amended

VRS Opposition to Motion to Dismiss/Strike     Case No. 3:18-cv-02160-BEN-NLS

Counterclaims that may be necessary.  Accordingly, there would be nothing futile about granting VRS leave to amend its Counterclaims.

**III.   Conclusion**

On the basis of the foregoing, VRS requests that this honorable Court DENY LTI's Motion.  However, to the extent that the Court finds that any part of VRS's pleadings are insufficient as a matter of law, VRS requests leave to amend its pleadings to remedy any such deficiencies.


LAW OFFICE OF MATTHEW SHAYEFAR, PC

By /s/ *Matthew Shayefar*
    MATTHEW SHAYEFAR

BOSTON LAW GROUP, PC

By /s/ *Valentin Gurvits*
    VALENTIN GURVITS
    (*pro hac vice* forthcoming)

Attorneys for Defendant V.R.S. Virtual Reality Technology Ltd.



Dated: January 25, 2019

1

## CERTIFICATE OF SERVICE

2

**I hereby certify** that a true and correct copy of the foregoing was served

3

electronically via the CM/ECF electronic filing system on all counsel or parties of

4

record on the service list below on January 25, 2019.

5

/s/ Matthew Shayefar

6

Matthew Shayefar

7

## SERVICE LIST

8

9

Conrad Brently Wilton

Fox Rothschild, LLP

10

10250 Constellation Blvd., Suite 900

Los Angeles, California 90067

11

cwilton@foxrothschild.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

VRS Opposition to Motion to Dismiss/Strike     Case No. 3:18-cv-02160-BEN-NLS