Lincoln Bandlow (SBN: 170449)
 LBandlow@foxrothschild.com
Conrad B. Wilton (SBN: 313348)
 CWilton@foxrothschild.com
FOX ROTHSCHILD LLP
10250 Constellation Blvd., Suite 900
Los Angeles, CA 90067
Telephone: 310.598.4150
Facsimile: 310.556.9828

Attorneys for Plaintiff
LA TOURAINE, INC. *dba* NAUGHTY AMERICA

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA TOURAINE, INC., a Nevada corporation *dba* NAUGHTY AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>IVAN VARKO, a Slovenian national *aka* John Deiz, John Daizy, John Deig, Alex Novak, and "Daizzzy," and V.R.S. VIRTUAL REALITY TECHNOLOGY LTD, a Cyprus limited company *dba* SEXLIKEREAL,<br><br>Defendants. | Case No.: 3:18-CV-02160-BEN-NLS<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO DISMISS THE FOURTH AND FIFTH COUNTERCLAIMS, AND TO STRIKE THE SECOND AFFIRMATIVE DEFENSE ALLEGED BY DEFENDANT VIRTUAL REALITY TECHNOLOGY LTD.**<br><br>Judge:   Hon. Roger T. Benitez<br>Date:    March 11, 2019<br>Time:    10:30 a.m.<br>Courtroom: 5A |

# MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff La Touraine, Inc. *dba* Naughty America ("LTI") respectfully submits this Reply in Support of its Motion ("Motion") to dismiss the Fourth and Fifth Counterclaims of V.R.S. Virtual Reality Technology Ltd. *dba* SexLikeReal ("VRS") for fraud and unfair competition, respectively, and to strike VRS' Second Affirmative Defense for copyright misuse.

## I.   INTRODUCTION

VRS' counterclaims for fraud and unfair competition revolve around the alleged fraudulent representation that LTI purportedly made to VRS that VRS had permission to use LTI's copyrighted works and trademarks in ways that exceeded the scope of the parties' Affiliate Agreement. VRS failed in its Counterclaim and in its Opposition to this Motion, however, to identify a single communication, correspondence, or specific representation – either oral, written, or otherwise – in which a representative at LTI supposedly instructed a representative at VRS to disregard the Affiliate Agreement and exploit LTI's copyrights and trademarks to promote VRS' goods and the goods of VRS' third-party partners. The Opposition asserts that LTI's CEO and two other LTI employees made these representations, but it fails to indicate when the representations were made, how they were communicated, to whom at VRS the representations were made, and (most importantly), what was said. As a final resort, VRS argues that the Affiliate Agreement, itself, constitutes the purported "misrepresentation" and that LTI fraudulently induced VRS to enter into the agreement knowing several years later that it would cease paying VRS commissions and then seek to enforce its rights. Yet, VRS offers no facts in either its Counterclaim or Opposition that demonstrates that LTI had this purported fraudulent intent, nor can it, as VRS is merely a successor-in-interest to the agreement and was not present to witness any negotiations or representations whatsoever when the agreement was formed.

1

LTI'S REPLY ISO MOTION TO DISMISS AND STRIKE         CASE NO. 3:18-CV-02160-BEN-NLS
90635761.v1

Further, Rule 9 of the Federal Rules of Civil Procedure ("F.R.C.P") absolutely applies to a claim for unfair competition when, as in this case, the claim is based on an alleged fraud. Regardless of the adjective VRS chooses to characterize LTI's business practices (*e.g.*, deceptive, unlawful, unfair, or wrongful), VRS' claim is that LTI fraudulently represented that it consented to VRS breaching the Affiliate Agreement and exploiting LTI's works to promote VRS and third-parties. VRS' failure to plead this representation with any specificity warrants the dismissal of its unfair competition claim, just as it does for its fraud claim.

Finally, the authority the Opposition cites to try to save VRS' defense of copyright misuse from being struck is inapposite to this action and does not stand for the principals asserted by VRS. Regardless, even if copyright misuse transcends the bounds of anti-competitive behavior as VRS claims, nowhere in its Answer, Counterclaim, or Opposition does VRS assert facts that indicate LTI has used its copyrights to restrain the development or dissemination of competing products, secure an exclusive right, or obtain a limited monopoly. LTI merely seeks to enforce the duplication, dissemination, and use of its licensed works – rights that the Copyright Act expressly provide to all content creators.

Accordingly, VRS' counterclaims for fraud and unfair business practices should be dismissed, and VRS' affirmative defense for copyright misuse should be struck – all without leave to amend.

## II.   REPLY ARGUMENT

### A.   VRS' Assertion That It Has Pled Fraud With Sufficient Specificity Fails.

VRS concedes that the representations that LTI allegedly made to VRS consenting to VRS' breach of the Affiliate Agreement are supposedly embodied in "emails, instant messenger conversations and voice/video communications" (Opp. at 5); yet, VRS fails to plead the "who, what, where, when, and how" of any of these

communications in its Counterclaim.  The Opposition tries to answer some of these questions by disclosing the names of LTI's employees who allegedly made these representations and through what medium these representations were made, but VRS provides no information with respect to what specifically was said, who said it, when was it said, and to whom.  This is grossly insufficient, especially since LTI is a corporation with multiple employees – many of whom could have communicated with VRS at any given time during the course of the parties' nearly decade-long relationship. *See Spencer v. DHI Mortg. Co. Ltd.*, 642 F. Supp. 2d 1153, 1164 (E.D. Cal. 2009) (noting a plaintiff asserting fraud against a corporation must "allege the names of the person who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written") (citation omitted).  Broadly asserting that LTI made unspecified representations to VRS at some point between 2008 and 2017 is simply not enough.  *Id*. (finding complaint's "global approach" in alleging fraudulent statements was "unsatisfactory," "severe[ly] deficien[t]," and denied leave to amend).

        Unable to provide the substance of any these purported communications, LTI argues that the Affiliate Agreement itself constitutes the misrepresentation.  The Counterclaim does not contain any facts, however, that specify the fraudulent representations that LTI supposedly communicated to VRS to induce it to enter into the agreement (*i.e.*, who made the representations, when were they made, where were they made, how were they made, and what was communicated).[1]  Notably, VRS does not

---

[1] *See Aliya Medcare Fin., LLC v. Nickell*, 156 F. Supp. 3d 1105, 1124 (C.D. Cal. 2015) ("The mere failure to fulfill a promise or perform in the future… will not give rise to a fraud claim absent evidence that the promisor had no intention to perform at the time the promise was made.") (citation omitted).  VRS has pled no such evidence and cannot because 1) this evidence does not exist since LTI had every intention of performing under the agreement and did perform until it discovered VRS' flagrant

3

LTI'S REPLY ISO MOTION TO DISMISS AND STRIKE         CASE NO. 3:18-CV-02160-BEN-NLS

90635761.v1

contend that the parties negotiated the agreement or that LTI had any contact whatsoever with VRS or its owner Defendant Ivan Varko (the original signatory to the agreement) before the agreement was executed.[2]  To the contrary, **VRS admits no one at LTI made this fraudulent representation** and makes it clear that the agreement was a click-wrap contract Mr. Varko accepted, likely without having any contact or communication with anyone at LTI until after the agreement was executed.  Opposition at 3-4.

Accordingly, VRS' fraud claim does not come close to meeting the heightened pleading standard of Rule 9.

### B. VRS' Assertion That Rule 9 Does Not Apply To Its Unfair Competition Claim Fails.

VRS claims that "Rule 9 does not apply to the UCL (Cal. Bus. & Prof. Code § 17000, *et seq*.)."  The Ninth Circuit has ruled exactly to the contrary.  *See Kearns v. Ford Motor Co.*, 567 F. 3d 1120, 1125 (9th Cir. 2009) ("[W]e have specifically ruled that **Rule 9(b)'s heightened pleading standards apply to claims for violations of the… UCL.**") (emphasis added).

In *Kearns*, the plaintiff tried to do exactly what VRS tries here:  attempt to evade dismissal under Rule 9 by arguing the "unlawful" and "unfair" prongs constitute theories of liability separate and distinct from the "fraudulent" prong of the UCL.  *Id*. at 1127. The Ninth Circuit found, however, that because Kearns' claim hinged on whether the defendants concealed material facts (*i.e.*, that the vehicle Kearns bought was not demonstrably safer and more reliable that competitor models, as the defendant had falsely represented), Kearns alleged a "unified fraudulent course of conduct" and his

---

breach and 2) VRS was not an original party to the agreement or present upon its formation but rather assumed the obligations thereunder years later.

[2]  The very claim that VRS was fraudulently induced to enter into the Affiliate Agreement cannot be true in light of VRS' admission that it was a successor-in-interest to the agreement and not the original signatory.  Counterclaim at ¶ 10.

claims under California's Consumer Legal Remedies Act and Unfair Competition Law were "grounded in fraud." *Id*. Consequently, the appellate court required Kearns' entire complaint to be pled with particularity and found the district court's decision not to separately analyze Kearns' claims under each UCL prong to be proper. *Id*.

The Court should follow this approach here. VRS' claim for unfair competition arises out of LTI's alleged misrepresentation of its intent upon entering into the Affiliate Agreement and inducing VRS to operate outside the bounds of the agreement to VRS' purported detriment. Opp. at 6-8. In other words, VRS contends LTI concealed the material fact that it had no intention of ultimately performing under the Affiliate Agreement and sought to entrap VRS to breach the agreement so it could avoid paying commissions owed to VRS.[3]

Accordingly, the heightened pleading standard of Rule 9 does apply to VRS' UCL claim, and VRS falls well short of this bar.

### C.   VRS' Assertion Of Copyright Misuse Fails.

VRS declares that "the courts have soundly rejected the claim that copyright misuse must be grounded in anticompetitive behavior." Opp. at 11. Yet, the only authority VRS can provide in support of this assertion is a cherry-picked statement from a concurring opinion in which Judge Wardlaw of the Ninth Circuit opined that the defense of copyright misuse should not be limited to discouraging anti-competitive behavior, but rather focused on "whether the copyright is being used in a manner violative of the public policy embodied in the grant of a copyright." *Omega S.A. v. Costco Wholesale Corp.*, 776 F. 3d 692, 699 (9th Cir. 2015) (Wardlaw, J. concurring).

---

[3] Such a proposition is not even plausible. According to VRS, LTI terminated an agreement that had generated $300,000 in gross sales in a two-year period just so it could avoid paying VRS $70,000 in commissions. Counterclaim at ¶¶ 21, 31. To the contrary, LTI terminated the agreement to reign in VRS' rampant, willful, and long-term infringement of LTI's copyrighted works and trademarks which caused LTI to lose millions of dollars of anticipated revenue and suffer irreparable harm to its brand.

VRS fails to mention that the majority in *Omega S.A.* hinged its ruling on the fact that Omega attempted to use its copyrights to restrict the importation of its watches and fix resale prices after the watches had already been sold to distributors – a quintessential example of anti-competitive behavior that the court found to constitute copyright misuse. *Id*. at 694-95.  Moreover, the Ninth Circuit has adopted the view that copyright misuse involves restraining the development of competing products, and the few cases in which copyright misuse has been found have all involved anti-competitive behavior.  *Disney Enter., Inc. v. VidAngel, Inc.*, 2017 WL 6883685, at *9 (C.D. Cal. 2017) (citing *Triad Sys. Corp. v. Se. Exp. Co.*, 64 F. 3d 1330, 1336-37 (9th Cir. 1995) (rejecting copyright misuse defense when defendant failed to show plaintiff attempted to prohibit the development of competing software).

VRS is an affiliate and promoter of adult films and related products.  In no way does it compete with LTI, which produces adult films.  Indeed, nowhere in the Counterclaim does VRS plead that it competes with LTI or produces any adult films.  VRS' bald conclusion in its Opposition that it competes with LTI is wholly insufficient.  Opp. at 11.  Further, VRS does not plead that LTI is using its copyrights to restrain the development or dissemination of competing works.  Rather, VRS alleges LTI is simply attempting to avoid paying commissions VRS claims are owed.  Answer at 15, ¶ 2.  Plus, even if the copyright misuse defense were to be extended beyond "anti-competitive" behavior, it still must pertain the use of a copyright to "secure an exclusive right or limited monopoly not granted by the Copyright Office."  *Omega S.A.*, *supra* at 700.  LTI's alleged use of its copyrights to "force prior business associates to give up their legitimate claims arising from LTI's own illegitimate business practices" does not constitute use of a copyright to secure an exclusive right or limited monopoly over anything.  At best, it would simply allow LTI to avoid a contractual obligation to pay VRS commissions it alleges are owed.

Accordingly, VRS' copyright misuse defense is insufficiently pled and entirely

inapplicable to the facts of this case. It should be struck.

### D. VRS Should Not Be Given Leave To Amend.

Any attempt to amend VRS' pleadings will be futile and needlessly escalate the fees and costs for both parties. VRS indicates it can "easily point" to the communications between LTI and VRS during the parties' affiliate relationship that evidence LTI's alleged misrepresentations, (Opp. at 12); yet, its utter failure to allege when the communications were made, where, to whom, and (most importantly) their substance in either its Counterclaim, Answer, or Opposition is telling. Nevertheless, given the apparent ease with which VRS can plead these communications with sufficient specificity, a subsequent failure to do so should result in a dismissal with prejudice.

Further, as outlined above, VRS' copyright misuse defense is wholly inapplicable to the facts in this action. VRS' position that LTI misused its copyrights to avoid paying commissions is crystal clear, and it is not an allegation that LTI used its copyrights to secure an exclusive right or limited monopoly over anything. Plainly, VRS is attempting to jam a defense with a square shape into a case with a round hole. As a matter of law, even if all the factual allegations VRS pleads are true, LTI cannot be found to have committed copyright misuse.

## III. CONCLUSION

For the foregoing reasons, VRS' counterclaims for fraud and unfair business practices should be dismissed without leave to amend. Additionally, VRS' affirmative defense for copyright misuse fails as a matter of law and should be struck without leave to amend.

Dated: March 4, 2019                    Respectfully submitted,

                                        **FOX ROTHSCHILD LLP**

                                        By  */s/ Conrad Wilton*
                                            Conrad B. Wilton
                                            Attorneys for Plaintiff
                                            LaTouraine, Inc. *dba* Naughty America

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served electronically on all counsel or parties of record by the CM/ECF system.

Dated:  3/4/19              */s/ Conrad Wilton*
                             Conrad Wilton